IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS


UNITED STATES OF AMERICA ex rel. )
EMMETT LANE, JR., )
)
Petitioner, )
) Case No.   10-cv-820-DRH-SCW
vs. )
)
DAVE REDNOUR, Warden, )
)
Respondent. )

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

## I.   Introduction

This case is before the Court on a petition for writ of habeas corpus (Doc. 1). Respondent has filed a Response to the petition (Doc. 23).   Petitioner has filed a Reply (Doc. 25).   Based on the following, the Court **DENIES** and **DISMISSES** petitioner's habeas petition (Doc. 1).

## II.   Background

**A.    Procedural Background**

**1.    Facts**

Petitioner is currently incarcerated at Menard Correctional Center where he is serving a fifty-one year prison term for murder, attempted murder, and robbery (Doc. 23 Ex. A).   Petitioner was found guilty of shooting two victims, both of whom were United States Army staff sergeants on leave from Fort Campbell, Kentucky (Doc. 23 Ex. J at pp. 2-6).   One of those individuals, Alfonza Beasley, died as a

result of the shooting. The following retelling of the facts is from the Fifth District Appellate Court of Illinois Rule 23 Order (Doc. 23 Ex. C at pp. 1-4).

Prior to the events at issue, a fellow soldier, Lester Easley, had invited Beasley and Floyd Lewis to attend a birthday party for Cenethia Mackins in Mounds, Illinois. On October 16, 2004, Beasley went to Lewis's home to ride to the party with Lewis. They arrived at the party at approximately 6:30 p.m. Lester Easley, Rashawn Davis, Derrick Tucker, and Cenethia's brother were also in attendance. At the party, Davis asked Lewis if he had a weapon on him and Lewis indicated that he had as he collected guns. Davis asked to see the gun and he, Lewis, Easley, and Tucker walked out to Lewis's truck to see a M4 rifle and a .45 caliber, semiautomatic pistol, a Springfield 1911. Tucker also showed off his .9-millimeter handgun.

Later in the evening, the party moved to Club 37. Iesheka Maxwell went to the club with Beasley and Lewis. They arrived sometime between 9:30 and 10:00 p.m. Iesheka drove the truck and when they arrived, she locked the truck and gave the keys to Lewis. Locking the vehicle automatically activated the trucks alarm system. Lewis and Davis each had three or four alcoholic beverages and Iesheka agreed to act as their designated driver when they left. Upon looking in the truck, Lewis noted that his semi-automatic pistol was missing. The M4 rifle was still in the truck. The pistol had a full magazine but no round in the chamber.

Lewis believed that Davis and Tucker stole the gun because they were the only ones who had seen the gun earlier. Lewis instructed Beasley to wait by the

truck and he went into the club to tell Lester Easley. Lewis told Easley that someone broke into his truck and took the pistol and reminded him that only three people knew the pistol was in the truck.

Easley went with Lewis back to the truck and then returned to the club to find Davis and Tucker. Easley asked Davis about Lewis's truck, and although Davis indicated that he had heard about the theft he denied involvement. Easley walked back outside and noticed that Lewis and Beasley were shouting at people outside the bar. Lewis was shouting "Who broke in my truck?" and Beasley shouted expletives. At that time, Tucker and defendant, Tucker's cousin, walked up to the truck. Lewis asked defendant about the break-in and defendant replied that he didn't care about the vehicle. Defendant and Lewis exchanged words until Easley pushed them apart.

Lewis then saw Beasley "fussing" with Tucker and Tucker pulled his .9-millimeter out and pointed it at Beasley's head. Beasley, who had the M4 rifle from the truck, chambered a round and pointed it at Tucker. Beasley then switched the weapon to his left hand, lowered the weapon and pushed the .9-millimeter away from his face. Defendant snuck in behind Tucker and attempted to grab the M4 from Beasley's hands. The two fought over the gun and Beasley eventually lost hold of the gun. Defendant pointed the gun at Beasley who raised his hands and tried to knock the weapon away from his face. Defendant stepped back and fired, hitting Beasley in the head. Beasley fell to the ground and Defendant shot him again. Lewis shouted "whoa, whoa, whoa" and moved toward

Defendant who shot him in the chest. Lewis fell and Defendant shot him in the neck.

During the course of events, Tiffany Wilson, another patron at the club was in her car listening to music. She saw Tucker walking behind the Club 37 building with a silver handgun. Three minutes later she heard gun shots. Tiffany started her car and the Defendant ran up to her car and jumped in the passenger-side door holding a large, black gun. He told Tiffany to get moving. She drove a short distance when defendant instructed her to stop the vehicle. He stepped out of the vehicle, threw the gun in the grass, and then got back in. Tiffany dropped defendant off in Pulaski.

Petitioner was found guilty of first degree murder, attempted murder, and robbery (*Id*. at pp. 1-4).

### 2. State Court Proceedings

After his conviction, petitioner pursued a direct appeal, raising only one issue, that the prosecutor made improper statements to the jury during closing arguments (Doc. 23 Ex. A). In that appeal, petitioner focused on three types of comments (Doc. 23 Ex. C). Petitioner argued that the prosecution improperly accused petitioner's counsel of deception and trickery, repeatedly focused on the status of the witnesses as soldiers making them sound more trustworthy, and told the jury that petitioner had murdered and executed an unarmed soldier (*Id*. at p. 8). Although the Fifth Circuit Appellate Court of Illinois noted that petitioner's counsel did not properly object to the remarks, thereby preserving petitioner's appeal,

petitioner argued that the appeals court should review the comments for plain error (*Id*. at p. 7).   The Appellate Court reviewed the comments and although found the two comments regarding soldiers to be improper, the Appellate Court found that petitioner was not prejudiced by these statements (*Id* at p. 10).   The court found that petitioner was not prejudiced and petitioner's appeal was denied (*Id*. at pp. 10-11).   Petitioner raised the same argument in his PLA to the Illinois Supreme Court, but the Illinois Supreme Court denied his appeal (Doc. 23 Exs. D & E).

Petitioner also filed a *pro se* post-conviction petition on May 21, 2007.   In his petition, petitioner alleged that:

(1)   The trial court failed to voir dire the jurors with respect to any potential bias in favor of witnesses who serve in the military and/or wearing their military uniform;

(2)   His trial counsel was ineffective for failing to:

(a)   failing to voir dire potential jury with respect to military uniforms, and

(b)   failing to interview Michael Schoffner or call him as a trial witness;

(3)   He was not proven guilty beyond a reasonable doubt; and

(4)   His appellate counsel was ineffective for failing to raise the above issues.

(*See* Doc. 23 Ex. F).   The trial court found that all but two of his claims were forfeited.   This included his claims that the State failed to prove his guilt beyond a reasonable doubt, the issue regarding jury bias, and the ineffective assistance of counsel claim based on failure to question jurors about bias (*Id*. at pp. 2-3, 6).

However, the trial court reviewed the issue regarding the failure to call Michael Schoffner as the failure of the attorney was not in the trial record and thus was not deemed forfeited by failing to bring it on direct appeal (*Id*.).   The Court found that counsel was not ineffective for failing to call Schoffner because counsel disclosed Schoffner as a witness but his testimony would not help and could in fact have harmed petitioner's case.   The Court found that Schoffner's testimony at the post-conviction hearing indicated that petitioner had been drinking and was angry on the night of October 16-17, 2004 (*Id*. at pp. 7-8).   As to petitioner's claim regarding the ineffectiveness of appellate counsel, the trial court dismissed the issue regarding the witnesses wearing their military uniforms issue, finding that petitioner presented only speculation that the presence of the military uniforms enhanced the credibility of the witness (*Id*. at pp. 9-11).   As to counsel's failure to raise ineffective assistance of trial counsel, the court found that trial counsel's actions did not rise to the level of ineffectiveness and thus appellate counsel was not ineffective in not bringing the issue on appeal (*Id*. at pp. 11-12).

On appeal of that petition, petitioner raised only the issue that appellate counsel was ineffective for failing to raise on direct appeal the claim that petitioner was deprived a fair trial because the State's witnesses wore their military uniforms during testimony (Doc. 23 Ex. J).   The appellate court noted that the issues in his original post-conviction petition at the trial court stage, which were relevant to the appeal, were the claim that he was denied a fair trial because jurors were not questioned on their potential bias regarding people serving in the military, trial

counsel was ineffective for failing to submit voir dire questions on the issue of bias, and appellate counsel was ineffective for failing to raise the issue on appeal (*Id*. at p. 6). The appellate court noted that all three issues involved the issue of witnesses wearing military uniforms during trial even though the introduction did not list that as a separate issue and that petitioner had argued that issue throughout his petition (*Id*.). The appellate court noted that at the trial court level of the petition, the State had objected to questions regarding the military uniform issue, arguing that the issue was waived as it was not in the petition (*Id*.). The trial court found that it had been adequately raised in the arguments section (*Id*. at p. 7). The appellate court found that petitioner was not prejudiced by the witnesses testifying in their military uniforms. Further, the court found that in the face of the overwhelming evidence in favor of petitioner's guilt that the appellate court, on direct appeal, would not have reached a different result if the issue involving the witnesses' uniforms had been raised (*Id*. at pp. 10-11).

Petitioner next filed a PLA with the Illinois Supreme Court. On that appeal he raised five issues for the Supreme Court's review. These included:

(1)  Whether appellate court erred in finding trial court correct on petitioner's issue of appellate counsel being ineffective for failing to raise the issue of the three witnesses wearing military uniforms;

(2)  Whether appellate court erred in finding that appellate counsel was not ineffective for failing to raise the military issue on direct appeal;

(3)  Whether appellate court erred in affirming the post-conviction petitioner's denial where petitioner would have been entitled to relief if the military uniform issue had been raised on appeal;

(4)     Whether trial counsel was ineffective for failing to call Michael Schoffner because he would have supported the defense's theory of self-defense;

(5)     Whether the state failed to prove petitioner guilty beyond a reasonable doubt.

(Doc. 23 Ex. K).   The Illinois Supreme Court denied petitioner's appeal (Doc. 23 Ex. L).

## B.     Habeas Petition

Petitioner filed the instant petition on October 20, 2010 (Doc. 1).   In his petition, he raises six issues:

(1)     That the prosecution made improper remarks during closing arguments, accusing defense counsel of lying and/or attempting to confuse the jury, as well as drawing unnecessary attention to the military status of State witnesses;

(2)     That the trial court erred by allowing State witnesses to wear their military uniforms while they were testifying, without questioning potential jurors as to whether there was any underlying bias in favor of members of the military;

(3)     That he had ineffective assistance of counsel in that potential jurors were not questioned during voir dire about any bias they may have had in favor of the members of the military;

(4)     That his counsel was ineffective for failing to call witness Michael Schoffner to the stand, who was allegedly present during the time of the murder and would have corroborated petitioner's claim of self-defense;

(5)     That the State failed to prove him guilty beyond a reasonable doubt because there was clear evidence that showed petitioner acted on threat of force;

(6)     That his appellate counsel was ineffective for failing to raise the above mentioned grounds on appeal.

Respondent has filed an Answer to the petition (Doc. 23) arguing that petitioner's claims are procedurally defaulted because petitioner either failed to raise them on one complete round of state court proceedings or because the state court rejected the ground on an independent and adequate state law ground. petitioner filed a Reply (Doc. 25) arguing that his issue regarding the state witnesses improperly wearing their military uniforms was raised through one full round in his post-conviction proceedings.

### III.    Analysis

The Anti-Terrorism and Death Penalty Act of 1996 ("AEDPA") allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."    28 U.S.C. § 2254(a).    Before considering the merits of a habeas petition, a federal court must ensure that the petitioner has exhausted all available state remedies and fairly presented all of the claims in his habeas petition to the state courts.    *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *Spreizer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000).

### A.    Procedural Default

The procedural default doctrine prevents the federal court from reaching the merits of a petitioner's habeas petition when either "(1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented

to the state courts and it is clear that those courts would now hold the claim procedurally barred." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 & n.1 (1991)). It is the second type of procedural default that respondent argues is at issue in this case. A petitioner is required to present his federal habeas claim through one complete round of state court review, either on direct appeal or through a post-conviction petition. *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004); *White v. Godinez*, 192 F.3d 607, 608 (7th Cir. 1999) (one complete round of review includes a petition for discretionary review to highest court in state and applies equally to claims brought up on collateral review). In Illinois, this means that a petitioner must have raised the claim on appeal and then presented the claim again in a petition for leave to appeal to the Illinois Supreme Court. *Guest v. McCann*, 474 F.3d 926, 940 (7th Cir. 2007). When a petitioner has exhausted his state court remedies, but fails to raise his federal claim at each level of state review then his claim is procedurally defaulted. *Id.*; *Perruquet*, 390 F.3d at 514.

A petitioner's claim which has been procedurally defaulted is usually barred from federal habeas review, unless the petitioner can show cause and prejudice for the default or he can show that the denial of relief will result in a fundamental miscarriage of justice. *Coleman v. Hardy*, 628 F.3d 314, 318 (7th Cir. 2010) (citing *Holmes v. Hardy*, 608 F.3d 963, 967 (7th Cir. 2010)); *Lewis*, 390 F.3d at 1026. A petitioner can show cause by demonstrating that some sort of external factor prevented him from presenting his habeas claim to the state court. *Lewis*,

390 F.3d at 1026. "Prejudice is established by showing that the violation of the petitioner's federal rights 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). A petitioner may also overcome a procedural default by showing that the denial will result in a fundamental miscarriage of justice. To show a fundamental miscarriage of justice, the petitioner must show that "he is actually innocent of the offense . . . , [in other words] that no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).

Thus, "[f]ederal habeas relief is available only when a petitioner has given the state courts a full and fair opportunity to review a claim when there is cause and prejudice for the failure to raise the claim in state court or when the default would lead to a fundamental miscarriage of justice." *Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996) (citations omitted).

Respondent argues that all six of petitioner's issues in his petition are procedurally defaulted. Petitioner, in his Reply, only argues that his claim that appellate counsel was ineffective for failing to raise the issue regarding State's witnesses wearing military uniforms while testifying was not procedurally defaulted as it was sufficiently raised in the post-conviction petition. The undersigned agrees with respondent, in part, finding that five of petitioner's six issues in his petition are procedurally defaulted. Specifically, the undersigned finds that

petitioner's claims that the prosecutor made improper statements to the jury during closing arguments (Issue 1), the trial court failed to question potential jurors on bias towards servicemen (Issue 2), both petitioner's claims regarding the ineffectiveness of trial counsel (Issues 3 & 4), and petitioner's claim that the State failed to prove his guilt beyond a reasonable doubt (Issue 5) are all defaulted.

### 1.    *Prosecutor's Improper Statements*

Petitioner's first claim in his petition is that the prosecutor made improper statements to the jury during his closing arguments.   Specifically, petitioner contends that the prosecutor accused defense counsel of lying and drawing unnecessary attention to the military status of the State's witnesses.   This issue was petitioner's sole argument on direct appeal of his conviction (Doc. 23 Ex. C at p. 7).   On appeal, the Fifth District Appellate Court of Illinois found that petitioner did not object to the improper remarks at the time they were made (*Id*).   Instead, petitioner asked the appellate court to review the comments under the plain error standard.   The appellate court found that petitioner had not timely objected to the improper comments and thus he did not preserve the issue for review.   However, the appellate court did review the comments under the "plain error rule" which "provides a limited exception to the waiver rule and is appropriately invoked where the evidence is closely balanced or where the error deprived defendant of a fair trial" (*Id*. at p. 8).   The appellate court ultimately found that while the comments focusing on the status of the State's witnesses as soldiers, and comments that petitioner murdered an unarmed soldier, were improper, the statements did not

constitute a material factor in his conviction and that the outcome would have been the same despite the statements (*Id*. at pp. 10-11).

Because the appellate court deemed this claim waived by counsel's failure to object at trial or in a post-trial motion and instead reviewed the issue only under the plain error rule, petitioner's claim is procedurally defaulted. The waiving of a claim on appeal for failure to follow Illinois's requirement to raise all errors first in a post-trial motion is an adequate and independent state ground for resolving the claim. *Miranda v. Leibach*, 394 F.3d 984, 991-92 (7th Cir. 2005). Although the appellate court went ahead and reviewed petitioner's claim for plain error after finding he had waived his claim on appeal, that review does not cure petitioner's default. *Miranda*, 394 F.3d at 992. The Seventh Circuit has held that "an Illinois court does not reach the merits of a claim simply by reviewing it for plain error." *Id.* (citing *Neal v. Gramley*, 99 F.3d 841, 844 (7th Cir. 1996) (Illinois's review for plain error "does not open up the merits any wider for consideration by the federal court."). As petitioner's claim was only reviewed by the appellate court for plain error, the court's decision constituted an independent and adequate state law ground and thus petitioner's claim is procedurally defaulted.

### 2.      *Potential Bias of Jury*

As to his issues that the trial court failed to ask about potential bias in favor of active military (Issue 2) and his claim that his counsel was ineffective for also failing to ask this same question of the jury (Issue 3), petitioner did raise these claims in his *pro se* post-conviction proceeding in state court. However, the state

trial court found that those claims were waived because petitioner failed to bring up the matters on his direct appeal (Doc. 23 Ex. F). The state court found that as these issues are manifested from the trial record and thus could have been raised in petitioner's original appeal, he could not now raise the issue on his post-conviction motion (*Id.* at pp. 2-4). As petitioner failed to present his claim according to the procedural law of Illinois resulting in it being deemed waiver, the waiver is considered to be denied on an independent and adequate state law ground. *Szabo v. Walls*, 313 F.3d 392, 395 (7th Cir. 2002) ("A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time . . . . Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks collateral review); *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). Further, as respondent points out, petitioner as failed to raise these issues on his appeal of his petition to the appellate court. The Court also notes that petitioner has failed to show cause for his failure to raise this claim at the proper time or prejudice resulting therefrom. Thus, the claim is procedurally defaulted.

### 3.   *Failure to Prove Guilt Beyond a Reasonable Doubt*

Likewise, on petitioner's claim that the State failed to prove his guilt beyond a reasonable doubt, the trial court on petitioner's post-conviction proceeding found that petitioner had waived the issue by failing to present it in his direct appeal (Doc. 23 Ex. F at p.2). *See People v. Izquierdo*, 262 Ill.App.3d 558, 560, 634 N.E.2d 1266, 1268 (5th Dist. 1992). This claim is also procedurally defaulted as it was

denied on an independent and adequate state law ground and petitioner has failed to show cause or prejudice.

### 4. **Ineffectiveness of Trial Counsel**

Further, as to petitioner's claim that his trial counsel was ineffective for failing to call Michael Schoffner as a witness, petitioner raised this issue in his state post-conviction proceeding and in his PLA, but neglected to raise the claim on his appeal to the state appellate court. Thus, this claim as well is procedurally defaulted as petitioner failed to present the claim through one *complete* round of state court review. *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010).

### 5. **Ineffectiveness of Appellate Counsel**

However, as to petitioner's claims that his appellate counsel was ineffective, the undersigned finds that this claim is not procedurally defaulted. Respondent argues that this claim is procedurally defaulted because he did not raise the specific factual basis for his present § 2254 claim in his state post-conviction proceeding. In petitioner's current habeas petition, petitioner argues that his appellate counsel was ineffective for failing to raise any of the claims in his current petition in appeal. On appeal of his state post-conviction petition, petitioner raised ineffective assistance of appellate counsel, arguing that his counsel failed to raise the issue that the trial court erred in denying his motion *in limine* to prohibit State witnesses from testimony in uniform (Doc. 23 Ex. J). The appellate court noted that while petitioner had not specifically raised this issue in the introduction of his post-conviction petition, his argument section raised the issue of the bias of

potential jurors due to having the witnesses testify in uniform. Further, the trial court, in taking evidence on the issue of ineffectiveness of appellate counsel, acknowledged that the claim was adequately addressed in the petition (Doc. 23 Ex. J at p. 6-7). The appellate court reviewed petitioner's claims, ultimately finding that his appellate counsel was not ineffective for failing to raise those issues on appeal.

Likewise, in this case, petitioner has raised the issue of whether his appellate counsel was ineffective for failing to raise the issues in this petition. However, the only issue which is related to the issue that was raised in petitioner's appeal of his state post-conviction petition, is the issue of whether there the trial court or trial counsel erred in failing to voir dire the jury as to potential biases towards military witnesses testifying in their uniforms (Doc. 1 at p. 12-13). None of the other issues raised in petitioner's present petition were raised on the appeal of his post-conviction petition at the state level. Thus, the Court finds that petitioner did raise his ineffective assistance of appellate counsel, at least as to State witnesses wearing their uniforms, through one full round of state court and the Court will, accordingly, review that claim on the merits.

**B.      Ineffectiveness of Appellate Counsel**

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as the AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials'

and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is not another round of appellate review. Federal courts do not review state court determinations of state law questions on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bloyer v. Peters*, 5 F.3d 1093, 1098 (7th Cir. 1993). Section 2254(d) restricts habeas relief to cases wherein the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

The issue for this court on habeas is whether the state court's decision was "contrary to" or constituted an "unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). "Avoiding these pitfalls does not require citation to [Supreme Court] cases — indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). The Supreme Court most recently announced that in reviewing a habeas petition, the reviewing court must decide if "fairminded jurists could disagree" that a state court decision conflicts with Supreme Court precedent. *See Harrington v. Richter*, -- U.S.--, 131 S.Ct. 770, 786 (2011); *Cullen v. Pinbolster*, --U.S.--, 131 S.Ct. 1388, 1402 (2011).

The Seventh Circuit has noted that the scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003). The unreasonable application standard is "a difficult standard to meet." *Id*. at 662. Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id*. at 662 (internal citation omitted).

Here, petitioner argues that his appellate counsel was ineffective for failing to raise a number of issues on his direct appeal. The only claim of ineffectiveness that are not procedurally defaulted are those which related to issues petitioner argues appellate counsel should have raised on direct appeal regarding potential jury bias toward State's witnesses being allowed to wear their military uniforms while testifying at trial.

The Seventh Circuit has recently stated that appellate counsel is not required to present every non-frivolous claim on behalf of their client but are allowed to raise strong arguments over weak ones. *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013) (citing *Jones v. Barnes*, 463 U.S. 745, 752-53 (1983)). However, appellate counsel is expected to raise the most promising arguments so that if counsel abandons a non-frivolous claim "that was both obvious and clearly stronger than the claim" actually presented on appeal, his performance could be considered deficient. *Id*. (internal quotations omitted) (*quoting Smith v. Robbins*, 528 U.S.

259, 288 (2000)).   The Seventh Circuit has noted that this presents a difficult standard for a petitioner to meet "because the comparative strength of two claims is usually debatable."   *Id.*

Here, the Court finds the appellate court's findings to be a reasonable application of federal law.   In petitioner's state post-conviction proceedings, petitioner argued that appellate counsel should have presented this issue along with the other issue raised on appeal, the prejudice petitioner claims he received from prosecutor's closing arguments.   Petitioner argued on appeal of his post-conviction proceeding that the combination of the two arguments would have made his appeal stronger.   The appellate court found that appellate counsel could not have obtained a different result if he had raised this issue on appeal along with the other issue raised as it would not have strengthened his argument.   The appellate court noted that impact of a witness's uniform on jurors who already know that a witness is military personnel is speculative as the jurors already knew that the witnesses were members of the military.   Further, the appellate court pointed out that defense counsel did question potential jurors on their bias towards members of the military and questioned some potential jurors were asked how they would react to a witness testifying in uniform.   The appellate court also found that the evidence against petitioner was strong as there was forensic evidence to suggest that Beasley was shot while lying on the ground and petitioner gave a recorded statement which presented a contradictory account to the evidence.   Although the appellate court did not specifically find that one claim was stronger than the other, the appellate

court found that the additional claim would not have made petitioner's argument on direct appeal any stronger. Likewise, this Court does not find that petitioner's proffered claim here is any stronger than the claim presented on appeal. Thus, the appellate court's finding that petitioner's appellate counsel was not ineffective was not unreasonable. The Court **DENIES** this claim **with prejudice**.

C.    **Certificate of Appealability**

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A petitioner cannot appeal a dismissal of his habeas petition unless he obtains a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(1). A Certificate of Appealability may only be issued where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Evans v. Circuit Ct. of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). This requirement has been interpreted by the Supreme Court to mean that an applicant must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-el v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). While a petitioner need not show that his appeal will succeed, he must show "something more than the absence of frivolity" or the existence of mere "good faith" on his part. *Id.* at 338 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). Here, the undersigned finds no basis for a

determination that its decision to dismiss petitioner's claims was debatable or incorrect. Petitioner's claims were dismissed because they were either procedurally defaulted, a ground which a reasonable jurist would not find debatable, or meritless. Accordingly, the Court **DENIES** petitioner a Certificate of Appealability in this case.

## IV.    <u>Conclusion</u>

Therefore, the Court **DENIES** petitioner's § 2254 petition for writ of habeas corpus and **DISMISSES with prejudice** all of the claims he raises as either procedurally defaulted or meritless. The Court further **DENIES** petitioner a Certificate of Appealability under 28 U.S.C. § 2253(c).

**IT IS SO ORDERED**.

Signed this 3rd day of December, 2013.

Digitally signed by
David R. Herndon
Date: 2013.12.03
10:14:00 -06'00'

**Chief Judge**
**United States District Court**